OPINION OF THE COURT
Martin Shulman, J.
Petitioner King Enterprises, Ltd. (King or petitioner) moves for an order as follows: (1) striking respondent Laura O’Connell’s (O’Connell or respondent) jury demand; (2) granting petitioner leave to conduct an examination before trial (EBT) of O’Connell; and (3) directing O’Connell to pay King "all due, current and future use and occupancy pendente lite.” O’Connell opposes the motion and cross-moves for sanctions against King for seeking use and occupancy in this proceeding especially when respondent has not been dilatory (see, RPAPL 745). Both the motion and cross motion are consolidated herein for disposition.
BACKGROUND
King commenced this proceeding to recover possession of a rent-stabilized apartment (No. 2E) located at 441 West 51st Street, New York, New York (subject premises). Specifically, petitioner alleges that O’Connell is not maintaining the subject premises as her primary residence as she actually resides at 38 Joval Court, Brooklyn, New York.
O’Connell interposed an answer containing seven affirmative defenses and one setoff/counterclaim.
MOTION TO STRIKE THE JURY DEMAND
O’Connell apparently gained legal possession of the subject premises in 1985. Respondent’s affidavit is glaringly deficient as to the particulars of her relationship with George O’Connell, the prior record tenant who executed the January 31, 1974 vacancy lease (vacancy lease). Nonetheless, O’Connell does not claim to have executed her own vacancy lease at any time and evidently took possession pursuant to a successive renewal *927 lease, which incorporated by reference the terms and conditions of the vacancy lease.
Paragraph 25 of the vacancy lease states that the record tenant voluntarily waived a right to a jury trial in: "any action, proceeding or counterclaim brought by either of the parties * * * on any matters whatsoever arising out of * * * this lease * * * Tenant’s use of or occupancy of said premises, and any emergency statutory or other statutory remedy” (emphasis added).
O’Connell claims petitioner’s right to commence a nonprimary residency, holdover proceeding "[did not exist and] was not a judicial cause of action at the time the [vacancy] lease was entered into (January 1994) [sic]. [Therefore,] the signatory could not have knowingly waived the right to a trial by jury in a nonprimary residence holdover proceeding” (Kletter opposing affidavit ¶12).
As an alternative argument, respondent claims the vacancy lease containing the jury waiver clause is inadmissible and unenforceable because the printed provisions of the vacancy lease do not comport with CPLR 4544 (i.e., the print in the lease is purportedly less than eight-point type).
This court will preliminarily address the alternative argument. No one questions the fact that the vacancy lease was executed prior to the July 1, 1975 effective date of CPLR 4544. Said CPLR provision required that for a lease agreement to be received in evidence in any trial, said print must be "clear and legible” or at least "eight points in depth.” CPLR 4544 further states, in relevant part, that "[t]he provisions of this section shall not apply to [lease] agreements or contracts entered into prior to the effective date of this section.”
Jossel v Filicori (145 Misc 2d 779 [Sup Ct, NY County 1989, Cahn, J.]) held that the aforecited portion of this statute expressly precludes retroactivity. Thus, this court finds Jossel controlling in the case at bar and the alternative argument challenging the vacancy lease print must fail.
As a corollary point, this court further concludes that respondent waived her CPLR 4544 defense by asserting a counterclaim for attorneys’ fees. In its petition, King seeks attorneys’ fees relying on paragraph 19 of the vacancy lease.[1] Respondent’s counterclaim for attorneys’ fees implicitly rests *928 on Real Property Law § 234 which provides that where a landlord has a right to obtain attorneys’ fees pursuant to an extant lease agreement, the tenant is given an implied reciprocal right to also recover such fees under the same lease agreement. Since respondent’s counsel relies on the vacancy lease’s attorneys’ fees provision vis-á-vis the counterclaim and had no reason to question the legibility and type size of paragraph 19 (which is identical to the print type used in 25 containing the jury waiver clause), respondent has no cause to complain about the latter’s print size.
This court will now address respondent’s principal argument for rendering the jury waiver clause inapplicable to this case. To preserve her right to a jury trial in the face of a jury waiver clause, O’Connell principally relies on Cromwell Assocs. v Kuehnrich (NYLJ, Mar. 14, 1990, at 24, col 5 [Civ Ct, NY County]) which concluded:
"[P]etitioner’s 'cause of action,’ is nonprimary residence * * * [and] did not become a ground for eviction, or nonrenewal in a lease case, until 1984 with passage of the 1983 Omnibus Housing Act.
"The jury waiver lease clause upon which petitioner is relying predates that cause of action by seventeen years.
"Under such circumstances it has been held that jury waiver clauses are ineffective since such rights of the landlord and waiver of a jury in determining these rights could not have been contemplated by the parties at the time the lease was executed. (Klipack v. Raymar Novelties, 273 App. Div. 54, Rasch Landlord & Tenant, Third Edition, Sec. 10:15.)”
Similar rulings were made in Odette Realty Co. v Carisi (NYLJ, Feb. 2, 1994, at 22, col 5 [Civ Ct, NY County]), Snow v . DeLaurentis (NYLJ, Nov. 15, 1995, at 26, col 4 [Civ Ct, NY County]) and Nostra Realty Corp. v Ferstenberg (NYLJ, Nov. 27, 1996, at 29, col 3 [Civ Ct, NY County]).
In addressing the issue of whether or not to strike the jury demand, this court must balance King’s expectation that O’Connell be bound by the terms of the expired vacancy lease which was extended and incorporated into respondent’s lease renewal, viz., the jury waiver clause, against respondent’s important constitutional right to a trial by jury.
The Appellate Division, First Department, in Klipack v Raymar Novelties (273 App Div 54, 57 [1st Dept 1947]), citing to *929 Schultz v Wietchner (271 App Div 971 [1st Dept 1947]), sets forth the parameters for the application of jury waiver clauses in future litigation: "It is not our province to determine whether as a matter of policy landlord and tenant proceedings to which the emergency rent laws apply should be tried before a jury rather than before a judge. It suffices for us to hold that the right of trial by jury is an important right; that while it may be waived by agreement covering future litigation between the parties, the extent of the waiver is one of intention, expressed intention to be sure, but intention nevertheless to be determined in the light of all the circumstances. It is one thing to say that the waiver of trial by jury applies to all the terms and conditions of the expired lease which are carried over into the new statutory tenancy. It is altogether different to maintain that such a waiver applies to terms and conditions which do not find their origin in the written lease, which could not have been within the contemplation of the parties when the waiver agreement was made but which were later brought into being by statutory enactment. It may well be that the distinction between Schultz v. Wietchner (supra) and the present case is one of degree only, but the difference of degree is so substantial as to constitute a difference of kind. The rule of Schultz v. Wietchner should not be extended to cover causes of action such as are here involved.” (Emphasis added.)
Significantly, the Appellate Division in Klipack and Schultz (supra) addressed the validity of an identically worded jury waiver clause in respective leases executed prior to the enactment of the Emergency Commercial Space Rent Control Law (L 1945, ch 3). In explaining why the Appellate Division upheld the same jury waiver clause in Schultz, the aforementioned Court said (at 56): "[Although the Commercial Rent Law attached a new condition to the right of a landlord to evict a tenant at the expiration of his term, namely, the requirement of good faith in demanding immediate possession for the landlord’s personal use, the waiver of trial by jury nevertheless applied. In that case, however, the proceeding was one directly relating to the occupancy of the tenant and to the right of the landlord to recover possession after termination of the written lease. In the present case the causes of action are those created entirely by statute. They in no way affect the conventional relationship of landlord and tenant. They exist not by virtue of such relationship but solely because of the statute itself1” (Emphasis added.)
This court finds that the lower court decisions such as Kuehnrich (supra) and the related line of cases failed to *930 consider the precedential weight of both the Klipack and Schultz holdings and overlooked the Appellate Division’s reasoning in Schultz (supra) which is dispositive of the disputed issue herein. These lower court decisions also overlooked the historic statutory scheme requiring occupants of rent-stabilized apartments to maintain such apartments as their primary residence.
When section 41 of Laws of 1983 (ch 403) was enacted, the Omnibus Housing Act amended Administrative Code of the City of New York § 504 (a) (1) (formerly § YY51-3.0 [a] [1]) by, inter alia, adding subparagraph (f) to the list of "exempt” housing accommodations. This section reads, in relevant part, as follows: "[E]xcept dwelling units * * * not occupied by the tenant * * * as his primary residence, as determined by a court of competent jurisdiction”. The amendment did not create a new cause of action, but simply granted a landlord the remedy of proceeding directly to court to recover possession of a rent-stabilized apartment occupied by a nonprimary resident. Prior to this statutory change, landlords could refuse to offer a renewal lease to the stabilized tenant not occupying the apartment as his/her primary residence and apply to the former New York City Conciliation and Appeals Board for a certification order. In other words, landlords had to take the circuitous, time-consuming route of exhausting its administrative remedies by obtaining an order certifying that the tenant is a non-primary resident and then relying on said predicate order to pursue either a summary holdover proceeding or an ejectment action. (See, Rent Stabilization Code former § 54 [E] et seq. [eff Mar. 1, 1972].) The serious public emergency that served as the impetus for City rent stabilization presupposed that New York City tenants requiring protection actually reside in their apartments as their primary residences. In other words, primary residency is the sine qua non for retaining that statutory tenancy in "perpetuity”.
When the Rent Stabilization Law was enacted in 1969 (Administrative Code, tit 26, ch 4), Rent Stabilization Code former § 54 (E) et seq. was adopted, the substance of which was in pari materia with the rent control statutory scheme reflecting a "zero” tolerance for the nonprimary resident possessing the regulated apartment. (See, Local Emergency Housing Rent Control Act [L 1962, ch 21, McKinney’s Uncons Laws of NY, § 8605] [eff Feb. 17, 1962]; New York City Rent and Eviction Regulations former § 18.) Under rent control, the landlord could obtain an order of decontrol from the Administrator/ *931 Commissioner and, thereafter, rely on this predicate administrative order to prosecute a summary proceeding or ejectment action to recover possession.
In 1983, the Legislature evidently determined the predicate requirement of obtaining an administrative order to be unduly burdensome and eliminated that requirement under both systems of rent regulation. That is, the 1983 amendment presumably granted a landlord a more cost-effective remedy of proceeding directly to court to recover possession of a regulated apartment not occupied by the tenant as his/her primary residence.
The foregoing analysis also reveals three marked differences that distinguish Klipack (supra), from the case at bar. First, the statutory scheme that afforded the landlord the right to seek an order certifying nonprimary residence status as a condition precedent to recovering possession of the rent-stabilized apartment existed prior to the execution of the 1974 vacancy lease.[2] Second, the jury waiver clause anticipated "any [future] matters * * * arising out of * * * any emergency statutory or other statutory remedy” (see, vacancy lease 25). There is no question that the 1983 amendment furnished petitioner the statutory remedy of proceeding directly to court. Third, unlike Klipack (supra) the instant proceeding "directly relate[s] to the occupancy of the tenant [i.e., O’Connell] and to the right of the landlord [i.e., King] to recover possession after termination of the written lease” (Klipack v Raymar Novelties, 273 App Div 54, 56, supra). The holding of Schultz (supra) would, therefore, be controlling.
Finally, this court observes that in the high volume business of renting residential and/or commercial premises, it is rare to discover that parties to the lease agreement have, in fact, read every single provision and contemplated every ramification such clauses may have on the newly established relationship. Even rarer will one expect landlords and tenants at lease signings to have contemplated potential litigation or disputes that might arise between them.
*932 If one were to analogize a landlord/tenant relationship to a marriage, there would be uniform agreement that it would be atypical for couples to contemplate divorce or other potential disputes, foreseen or unforeseen, at the celebration of their marriage. Yet, based upon the case law determining the validity of asserting the jury waiver clause in future litigation, this is precisely what landlords and tenants are expected to do at the lease signing. Moreover, as astutely noted by a landlord/ tenant legal commentator: "[L]ease clauses tend to waive jury trial for 'any’ cause of action, not a specific list. Just as when parties sign a general release they understand that the release stands as a bar both to the foreseen and the unforeseen, so does such a clause stand as a bar to any cause of action, even one not yet defined by the law. Were this not the case, then the common law could not continue to develop new causes of action because parties would forever be released from their contracts anticipating 'all’ causes of action.” (23 Treiman’s Housing Court Reporter, Commentary, at 74 [1995] [emphasis added].)
Based upon the foregoing, this court grants the branch of petitioner’s motion striking the jury demand based upon the applicability of the jury waiver clause to this nonprimary residency claim.
DISCOVERY
King seeks leave to conduct O’Connell’s EBT. In exercising discretion to permit discovery, courts have required that the party seeking discovery demonstrate "ample need” for the disclosure. However, such discovery must be carefully and narrowly tailored. (See, New York Univ. v Farkas, 121 Misc 2d 643 [Civ Ct, NY County 1983, Saxe, J.].)
In this nonprimary residency case, petitioner has demonstrated "ample need” to conduct O’Connell’s EBT. However, no proposed notice to take deposition with a companion document request have been furnished for the court’s review to determine whether the Farkas parameters have been fully met.
Accordingly, this court denies the branch of petitioner’s motion for discovery, without prejudice.
USE AND OCCUPANCY
The court, in its discretion, is empowered to direct payment of use and occupancy during a summary proceeding where there is a showing of delay on the part of a respondent pursuant to RPAPL 745 (2) (a). RPAPL 745 (2) (a) states:
"2. In the city of New York:
*933 "(a) In a summary proceeding upon the second request by the tenant for an adjournment, the court shall direct that the tenant post all sums as they become due for future rent and use and occupancy, which may be established without the use of expert testimony, unless waived by the court for good cause shown. Two adjournments shall not include an adjournment requested by a tenant unrepresented by counsel for the purpose of securing counsel made on the initial return date of the proceeding. Such future rent and use and occupancy sums shall be deposited with the clerk of the court or paid to such other person or entity, including the petitioner, as the court shall direct or shall be expended for such emergency repairs as the court shall approve.” (Emphasis added.)
Since petitioner failed to demonstrate that O’Connell has engaged in the dilatory tactics mentioned above, this court has no reason to award prospective use and occupancy during the pendency of this proceeding at this time. In fact, the resultant delay of this proceeding is due to the petitioner having generated the instant round of motion practice, inter alia, for discovery discussed above. (See, Hung-Thanh, Inc. v Doktori, NYLJ, Oct. 28, 1993, at 27, col 3 [App Term, 1st Dept].) Nor is King entitled to retroactive use and occupancy at this stage of the proceeding.
Accordingly, this court denies the remaining branch of petitioner’s motion for use and occupancy, pendente lite, at this time.
Notwithstanding the foregoing, the court finds it was not unreasonable for petitioner to rely on Eichenbaum v Mulbery (NYLJ, Mar. 10, 1994, at 24, col 4 [App Term, 1st Dept]), to request use and occupancy. Said reliance is, however, misplaced as Eichenbaum involved an appeal of an order dismissing the petition. Implicit in the appellate court’s decision was the purported fact that the tenant had not been paying any rent and/or use and occupancy for almost two years. This proceeding is a little over two months old. In any event, there is clearly no basis to impose any sanctions against petitioner. The respondent’s cross motion is, therefore, denied in its entirety.

. A party may not recover attorneys’ fees unless such an award is authorized by agreement (i.e., a lease) between the parties or by statute. (See, Hooper Assocs. v AGS Computers, 74 NY2d 487 [1989]; Friends of Yelverton v *928 163rd St. Improvement Council, NYLJ, Jan. 3, 1991, at 21, col 2 [App Term, 1st Dept].)

. When the vacancy lease was executed, the subject premises had been either vacancy decontrolled or vacancy destabilized (see generally, L 1971, ch 371) and, therefore, the rent regulations were not applicable to the record tenant. When the Emergency Tenant Protection Act of 1974 was enacted (L 1974, ch 576, § 4 [repealing vacancy decontrol]), just five months later, the record tenant who executed the vacancy lease assumed the rights and obligations that had been in effect since 1969 for apartments occupied by rent-stabilized tenants continuously since said date.